UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARYAM SALAM GEGAN,

Plaintiff,

v.

KILOLO KIJAKAZI, acting
Commissioner of Social Security,

Defendant.

No. 1:22-cv-00005-GSA

**ORDER DIRECTING ENTRY OF
JUDGMENT IN FAVOR OF DEFENDANT
COMMISSIONER OF SOCIAL SECURITY
AND AGAINST PLAINTIFF**

**(Doc. 19, 23)**

## I.      Introduction

Plaintiff Maryam Salam Gegan ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 19, 23.  The Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore Denied.

## II.      Factual and Procedural Background[2]

On February 14, 2020 Plaintiff applied for disability insurance benefits alleging a disability onset date of June 15, 2017.  The Commissioner denied the applications initially on April 24, 2020 and on reconsideration on July 14, 2020.  Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on April 6, 2021.  AR 32–53.  On April 30, 2021 the ALJ issued an unfavorable decision.  AR 13–31.  The Appeals Council denied review on October 28, 2021.  AR 1–6.  On December 31, 2021, Plaintiff filed a complaint in this Court.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 7 and 13.
[2] The Court will not exhaustively summarize the record as the parties are well informed of the same. Specific portions will be referenced when relevant to the parties' arguments.

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.  The ALJ's Decision

At step one the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged disability onset date of June 15, 2017 through her date last insured of June 30, 2019.  AR 19.  At step two the ALJ found that Plaintiff had the following severe impairments: lumbar spine disc protrusion; lumbar spine multi-level facet arthropathy; and hemorrhoids.  AR 19.  The ALJ also found at step two, in relevant part, that Plaintiff's adjustment disorder with anxiety was non-severe.  AR 20–22.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 22–23.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following restrictions: occasional climbing; balancing without limitation; frequent kneeling and crouching; occasional stooping and crawling; frequent bilateral overhead reaching; at will alternation between sitting and standing with no more than 5% off task activity for position changes. AR 23–26.

At step four the ALJ found that Plaintiff could perform her past relevant work as a cashier and patient sitter as generally performed.  AR 26–27.  Accordingly, the ALJ found that Plaintiff

was not disabled at any time between her alleged disability onset date of June 15, 2017 through her date last insured of June 30, 2019.  AR 27.

## V.   Issues Presented

Plaintiff asserts three claims of error: 1) that the ALJ erred in finding her mental impairment non-severe, in rejecting the contrary opinions of Drs. Chandler and Diego, in omitting any related limitations from the RFC, and in relying on the non-examining opinions in reaching that conclusion; 2) that the ALJ erred in finding Plaintiff could perform light work notwithstanding her back pain, and in rejecting Dr. Diego's related opinion; and 3) that the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's testimony.

### A.   The Mental Impairment and Related Opinions

#### 1.   Applicable Law

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004–05 (9th Cir. 2005) (*citing* 42 U.S.C. § 423(d)(1)(A)).   A medically determinable physical or mental impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and will not be found based solely on the claimant's statement of symptoms, a diagnosis or a medical opinion. 20 C.F.R. § 404.1521.

Step two is "a de minimis screening device [used] to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). A "severe" impairment or combination of impairments is one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520.  An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities.  *Webb v.*

*Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); 20 C.F.R. §§ 404.1522, 416.922. "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, and mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. 20 C.F.R. § 404.1522, 416.922.

When reviewing an ALJ's findings at step two the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687 (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.

*Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).  The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence.  *See* 20 C.F.R. §§ 404.1545(a)(3).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors.  20 C.F.R. § 404.1520c(c).  Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered.  *Id.*

### 2.   **Analysis**

At step two the ALJ found Plaintiff's impairment of adjustment disorder with anxiety was non-severe.  At the outset, Plaintiff challenges the ALJ's non-severity finding insofar as it was predicated on the ALJ's rejection of the contrary opinions of the consultative psychiatric examiner (Dr. Chandler) and of Plaintiff's physician (Dr. Diego), rejections which Plaintiff contends were improper.

On October 29, 2018 Dr. Chandler conducted a consultative psychiatric examination of Plaintiff at the request of the agency.  AR 323–26.  Dr. Chandler opined, in relevant part, that Plaintiff had moderate difficulty maintaining attention and concentration and moderately impaired ability to interact with the public, supervisors, and co-workers.  The ALJ found that the opinion was supported by explanation based upon the examination of the claimant, but the opinion was not consistent with Plaintiff's minimal mental health treatment and the longitudinal record showing psychiatric findings were within normal limits.  AR 21.

Plaintiff disputes the sufficiency of the ALJ's finding regarding the lack of mental health treatment.  Plaintiff contends that "The Ninth Circuit has expressly held that a claimant's failure to seek mental health care cannot be used as a reason for rejecting an examining psychologist's opinion."  Br. at 12  (citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).  However, that was not the express holding of *Nguyen* as explained below.

The ALJ in *Nguyen* rejected an examining opinion because the record "was devoid of any findings or complaints relative to a mental disorder of the claimant during the period of May 1988 until November 18, 1991, when the claimant was examined by a psychologist, R. Wayne Brown, Ph.D.,2 at the request of the claimant's attorney."  *Id.*  The Ninth Circuit found, "This is not a legitimate basis on which to discount Dr. Brown's opinion that claimant has a severe depressive disorder."  *Id.*  The Ninth Circuit partially faulted the ALJ's reasoning insofar as the ALJ implied the examining physician's opinion should be discounted because the examination was arranged by the claimant's attorney.  The Ninth Circuit rejected the idea that the attorney had an undue influence on the examiner's opinion by simply making the referral.  *Id.*  Those facts are not applicable here.  Second, the question at issue in *Nguyen* was the presence or absence of a mental disorder that satisfied listing 12.05, not the severity and functional impact thereof.[3]  Third, the Ninth Circuit in

---

[3] Despite describing the disorder in question as a "severe depressive disorder" the word severe as used in *Nguyen*

*Nguyen* applied the more demanding "specific and legitimate reasoning" standard to the ALJ's analysis.  In April of 2022, the Ninth Circuit clarified in *Woods* that this standard no longer applies to applications filed after the March 27, 2017 regulation revisions:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. See 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, see Murray, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

> *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Fourth, as Defendant observes, in *Molina* the Ninth Circuit drew a distinction between instances where the evidence suggests the failure to seek mental health treatment was attributable to the mental impairment as opposed to personal preference.  Resp. at 6, Doc. 23 (citing *Molina v. Astrue*, 674 F.3d 1104, 1113-1114 (9th Cir. 2012)).  Here, there is no reason to believe the failure to seek mental health treatment was attributable to Plaintiff's mental health impairment as opposed to personal preference given she consistently pursued care for her physical impairments.

The ALJ also rejected Dr. Chandler's opinion as inconsistent with the longitudinal record showing psychiatric findings were within normal limits.  AR 21.  Plaintiff argues "This finding is error because Dr. Chandler is the only medical source and the only psychologist who performed a detailed psychiatric examination of Plaintiff."  Br. at 13.  Plaintiff implies that detailed psychiatric examination findings performed by a psychiatric professional are the only findings relevant when assessing psychiatric limitations.  But Plaintiff does not support that proposition, and the argument

---

does appear to be an adjective, not the social security term of art used at step two.  At issue was the examiner's opinion that Plaintiff had an affective disorder that met Listing 12.04

runs counter to Plaintiff's subsequent contention that the examination notes and opinions of her primary care doctor, Dr. Diego (who is not a psychiatric professional and performed no detailed psychiatric examination), should have been given more credence.

Granted, the ALJ's generalization about "psychiatric findings within normal limits" gives a somewhat mistaken impression that the cited records were replete with psychiatric findings of the same type as Dr. Chandler's comprehensive mental status examination.  As Plaintiff emphasizes, Dr. Chandler's examination was the only comprehensive mental status examination and the only examination by a mental health professional.  A more accurate statement the ALJ could have made is that Plaintiff's treatment records for her physical conditions noted normal findings on the limited psychiatric topics they addressed.

Relatedly, in assessing the four broad areas of mental functioning (the "paragraph B criteria") the ALJ found only mild limitations in each.  As to concentration, persistence, and pace, the ALJ noted the results of cognitive testing and further noted that "treatment notes indicated that the claimant displayed normal attention span and concentration."  AR 20 (citing Exhibit 4F/41, 44, 47, 50; 19F/44, 48, 52, 56, 60, 64).

It is worth distinguishing the two components of the ALJ's reasoning, only one of which was persuasive.  In support of the ALJ's conclusion that Plaintiff had only mild concentration limitations, the ALJ cites Dr. Chandler's own examination findings which noted that Plaintiff could recite a minimum of four digits forward, but only three digits in reverse, and that she could spell the word "world" forward but made two errors when spelling the word in reverse.

Dr. Chandler was presumably aware of the results of the cognitive tests she herself rendered, and concluded that the errors on those two cognitive tests translate into a moderate limitation in attention, not a mild limitation as the ALJ found.

However, Dr. Chandler's identified limitation regarding concentration was also predicated

on a generalized observation of Plaintiff's concentration level during the visit: "the claimant had moderate difficulty maintaining attention and concentration for the duration of the evaluation." AR 325.  In that respect, Dr. Chandler's opinion is undermined by the numerous instances the ALJ cited of office visits noting normal attention span and concentration.  AR 491, 501, 517, 527, 532, 537, 542, 547, 551, 555, 559, 563.  It would seemingly be inappropriate to discount those generalized observations regarding concentration level simply because the office visits were for purposes other than mental health treatment.  Plaintiff does not acknowledge or dispute the ALJ's applicable reasoning or cite any counterexamples on the subject of attention and concentration.

The ALJ also rejected Dr. Chandler's opinion that Plaintiff had moderate limitations in interacting with the public, supervisors, and co-workers.  Relatedly, in finding only a mild limitation in social interaction at step two, the ALJ explained that treatment notes reflect she was "cooperative," in support of which the ALJ string cited the same exhibits cited above.  A review of the ALJ's cited examination notes reveals that "cooperative" was not noted as a "psychiatric" finding.  Rather, it is listed under "constitutional" alongside "well developed, well nourished, in no acute distress."  *See, e.g.*, 542, 546, 551.  In other words, the ALJ cited routine office treatment notes outside the mental health context to reach conclusions about Plaintiff's mental impairments.  The ALJ's reasoning here is not persuasive.

Notwithstanding, the ALJ's broader reasoning (minimal mental health treatment with psychiatric findings within normal limits) is on balance sufficiently substantial evidence to support the ALJ's conclusion that Plaintiff's adjustment disorder with anxiety caused no more than mild functional limitations and therefore not severe.

Plaintiff also underscores the opinion of her primary care physician, Dr. Diego, that she had no useful ability to maintain attention/concentration and no useful ability to deal with workplace stress.  AR 410–411.  The ALJ rejected this opinion for the same reasons noted above in addition

to the fact that Plaintiff's PHQ-9 score was negative for depression.

Plaintiff disputes the sufficiency of the ALJ's reasoning for the same reasons discussed above.  As to the concentration limitations, the Court finds the ALJ's reasoning sufficient for the same reasons discussed above.  Plaintiff disputes the relevance of the PHQ-9 scores because Dr. Diego attributed the mental limitations to anxiety, not to depression. AR 407.  The point is reasonably well taken.  As the ALJ noted, however, Plaintiff herself did attribute her concentration limitations in part to post-partum depression.  AR 323.  Thus, in assessing only mild concentration limitations it was not unreasonable for the ALJ to also observe that Plaintiff's PHQ-9 score was negative for depression.

With respect to Dr. Diego's identified limitation in handling workplace stress, this was also supported by Dr. Chandler who noted Plaintiff had moderate difficulty enduring the stress of the interview.  As the ALJ noted, however, psychiatric findings (albeit limited) were otherwise within normal limits.  Further, a review of the record reveals that while Plaintiff reported stress on some occasions (AR 491, 517, 532, 534, 539, 551), she denied stress on other occasions (AR 501, 527, 537, 542, 546, 555, 559).

Plaintiff contends the ALJ's most glaring error with respect to the consistency factor was the ALJ's failure to recognize that Drs. Chandler and Diego's opinions were consistent with each other.  Plaintiff contends this violates the regulations, chiefly 20 C.F.R. § 404.1520c(c)(2).  The cited regulation does require the ALJ to articulate how she considered the consistency factor.  The ALJ did so here.  Further, the ALJ accurately and comprehensively set forth the contents of the two doctors' opinions in succession.  The ALJ's discussion self-evidently reflects that the doctors identified many of the same restrictions and were therefore consistent with each other in those respects.  The fact that the ALJ did not explicitly call attention to that is not harmful error.  Although the consistency between the two opinions adds somewhat to their persuasiveness, that does not

undermine the ALJ's conclusion that neither opinion was consistent with the longitudinal record which reflected minimal mental health treatment and psychiatric findings within normal limits.

Plaintiff's final argument with respect to the psychiatric opinion evidence is that the ALJ harmfully erred in adopting the non-examining opinions who reviewed Plaintiff's file at the initial and reconsideration levels. The discussion breaks no new ground distinct from the argument that the ALJ erred in rejecting the examining opinions of Drs. Chandler and Diego.

Thus, substantial evidence supports the ALJ's conclusion at step two that Plaintiff's adjustment disorder with anxiety was non-severe, and substantial evidence supported the ALJ's rejection of the contrary opinions of Drs. Chandler and Diego.

### B. Plaintiff's Back Impairment and Dr. Diego's Related Opinion

The ALJ assessed an RFC for light exertional work which Plaintiff contends is unsupported by the record. Plaintiff contends the ALJ was equally unsupported in rejecting Dr. Diego's opinion which stated, in relevant part, that Plaintiff could sit for 10 minutes at a time for a total of less than 2 hours and could stand/walk for 5 minutes at a time for a total of less than 2 hours in an 8-hour workday; she needed at will position changes; would need 6 unscheduled 15-minute breaks; needed an assistive device to stand and walk; could never lift 10 pounds, never perform postural activities; had reaching limitations; would be off tasks 25 per cent or more of the workday and would miss more than 4 workdays a month because of her back pain. AR 408-10.

Plaintiff emphasizes a variety of examination and diagnostic findings which she suggests the ALJ did not fully capture and which she contends support greater limitations in the RFC, including: 1) Dr. Brox's workers compensation examination noting guarded and cautious gait, reduced lumbar ROM, and positive Patrick's test (AR 362-79); 2) Dr. Diego's exam noting lumbar tenderness and painful ROM (AR 298, 301, 307-08); 3) pain management nurse practitioner's notation of reduced ROM, positive Patrick's test, positive facet loading test, and medial branch

block administration (AR 425–27); 4) DPT Van Klaveren's observations of slow gait, stiffness, guarding at all times and poor prognosis (AR 437); 5) lumbar MRI showing a right foraminal and extra disc protrusion at L4-L5 (AR 317, 378).

The ALJ pin-cited most of the specific examples Plaintiff does, and in the instances she didn't the ALJ nevertheless did acknowledge a representative sample of records illustrating the same concepts. The ALJ acknowledged persistent complaints of radicular low back pain following a June 2017 work injury. AR 24 (citing Ex. 3F/10; 4F/40, 43, 46, 49; 15F/12; 16F/2; 19F/41, 58). The ALJ acknowledged lumbar spine tenderness to palpation and pain with flexion and extension but that the examinations of record were otherwise within normal limits, including a normal gait and station. AR 24 (citing Ex. 4F/41, 44, 50; 19F/44, 48, 52). The ALJ discussed Dr. Brox's workers compensation examination, acknowledged cautious gait and reduced lumbar ROM, but noted countervailing findings including getting up and down from the examination table without assistance, displayed satisfactory heel to toe walking, no assistive device use, normal reflexes, sensation, and 5/5 strength. AR 24 (citing Ex. 7F/10, 11, 17, 20).

Plaintiff suggests the ALJ overlooked the MRI results, but the ALJ did describe the MRI results in detail: "The claimant's May 21, 2018 lumbar spine imaging showed mild facet arthropathy and right foraminal and extra foraminal disc protrusion at L4-L5 with mild foraminal and extra foraminal encroachment" (Exhibit 3F/7, 82), and correctly noted the findings were mild. AR 251.

Consistent with the physical therapy records Plaintiff emphasizes noting poor prognosis, the ALJ noted Plaintiff attended physical therapy with minimal improvement. AR 24 (citing (Exhibits 11F; 14F; 15F; 19F/21)). The ALJ also noted that claimant reported relief from some pain medication but not from others, and that she declined injections. AR 24 (citing Ex. 19F/21).

The ALJ also considered evidence post-dating the date last insured to the extent that it was

probative of the claimant's functioning prior to the date last insured including: 1) ongoing complaints of radicular low back pain (Exhibits 12F/7; 14F/3, 9; 16F/2; 18F/4; 19F/21, 31, 36); 2) complaints of difficulty walking but denial of any loss of sensation or tingling (Exhibit 12F/8); 3) physical examination findings revealed tenderness to palpation of her lumbar spine, decreased spine range of motion, a positive Patrick Test, and a positive facet loading test, but normal deep tendon reflexes, intact sensation, and five out of five motor strength throughout (Exhibits 12F/9; 14F/4, 12; 19F/24); 4) she generally displayed normal gait and stability (Exhibit 19F/34, 39); 5) updated lumbar spine imaging continued to reflect mild findings including February 2020 lumbar spine x-ray showing mild facet arthropathy, but no advanced intervertebral disc narrowing (Exhibit 12E/9) and lumbar MRI dated August 14, 2020 showing mild right foraminal encroachment at L4-L5 due to an asymmetric disc protrusion and mild facet joint degeneration throughout the lumbar spine (Exhibit 12E/7).

The ALJ further discussed as follows:

> At the neurospinal examination in November 2020, the medical provider noted that the claimant complained of sharp pain, which was better when walking (Exhibit 17F/7). The doctor noted that the examination was difficulty because the claimant had a lot of symptom amplification (Exhibit 16F/3). The claimant demonstrated decreased lumbar spine range of motion with numbness in her bilateral anterior and lateral thighs and a slow limping gait, but she had normal deep tendon reflexes and a negative straight leg raise bilaterally (Exhibit 16F/3). The claimant demonstrated apparent five out of five muscle strength with breakaway strength in all muscle groups of both legs (Exhibit 16F/3). The provider recommended epidural steroid injections or pool therapy, but determined that the claimant was unlikely to require surgery (Exhibit 16F/3).

With the exception of medial branch blocks, the ALJ appears to have covered every abnormality Plaintiff discusses and even noted some additional abnormalities Plaintiff did not discuss. The ALJ also noted extensive countervailing findings on a variety of subjects indicative of functionality including gait, tenderness, range, strength, reflexes and sensation.

In sum, Plaintiff had mild spinal pathology on repeat imaging studies and mixed, normal,

or mild findings on exam.  The ALJ assessed a fairly restrictive RFC accommodating Plaintiff's lumbar spine impairment in several respects, including light work (no more than 10 to 20 pounds of lifting), at will position changes, and postural restrictions including no more than occasional stooping.  As here, when the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  The ALJ was justified in rejecting the extreme limitations identified by Dr. Diego as inconsistent with the largely mild physical examination and diagnostic findings.

Plaintiff concludes the argument with a half page section devoted to the concept that the ALJ erred because "The ALJ's RFC is consistent with no medical source opinion" and the ALJ simply split the difference between the non-examining opinions on the one hand (who found no severe impairment related to her spine) and Dr. Diego's opinion on the other.  The argument is unavailing.  The RFC need not mirror any particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence.  *See* 20 C.F.R. §§ 404.1545(a)(3).

### C.    Plaintiff's Testimony

#### 1.    Applicable Law

The ALJ is responsible for determining credibility,[4] resolving conflicts in medical testimony and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding

---

[4] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  S.S.R. 16-3p at 1-2.

subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

### 2.   **Analysis**

Plaintiff underscores the following statements from her testimony: because of her back pain she had to alternate between sitting, standing, walking and lying down; she had to spend about half of her day in bed; her family came to her house every day to help her; she was unable to take care of her children because of her back pain, so a healthcare provider took care for her children for 10 hours a day under a Stanislaus County program; she had symptoms of anxiety, including nervousness, fearfulness, fatigue, tension and edginess and she not get along with people (AR 46, 47, 323).

Plaintiff then quotes the ALJ's boilerplate language at the outset of the RFC analysis that "the claimant's statements concerning the intensity, persistence, and limiting affects of her

symptoms are not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision."  Plaintiff contends that all that follows is the ALJ's discussion of the medical evidence which is insufficient because: 1) the ALJ was required to identify the testimony she wished to reject and link that testimony to particular parts of the record, and 2) even if the ALJ had made legally adequate findings regarding the objective medical record, the ALJ's rejection of her testimony cannot be predicated on the objective medical evidence alone.

No controlling precedent has held in so many words that an ALJ must perform the matching exercise Plaintiff contends is required.  The Ninth Circuit has offered dicta on some occasions supporting Plaintiff's view.  *See, e.g. Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").  More recently, the Ninth Circuit has offered dicta suggesting otherwise.  *See, e.g.*, *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (noting Ninth Circuit caselaw "do[es] not require ALJs to perform a line-by-line exegesis of the claimant's testimony . . .").

Plaintiff's one page analysis breaks little new ground independent of the arguments above.  Save for the sitting, standing, and walking limitations, the testimony highlighted above was fairly non-concrete.  Plaintiff offers no theory on how those statements (such as her difficulty caring for children) should have been incorporated into the RFC in the form of concrete restrictions particularly under circumstances where the ALJ has already assessed a fairly restrictive RFC.

As to the sitting, standing, and walking limitations, the testimony overlaps to a large extent with the limitations identified by Dr. Diego, who identified more detailed and extensive restrictions than Plaintiff on more subjects, including that Plaintiff can sit for 10 minutes at a time for a total of less than 2 hours and could stand/walk for 5 minutes at a time for a total of less than 2 hours in an 8-hour workday; she needed at will position changes; would need 6 unscheduled 15-minute breaks;

needed an assistive device to stand and walk; could never lift 10 pounds, never perform postural activities; had reaching limitations; would be off tasks 25 per cent or more of the workday and would miss more than 4 workdays a month because of her back pain.  AR 408-10.

As discussed above, the ALJ's reasoning for rejecting that opinion was well grounded in the objective medical record and applies with equal force to Plaintiff's testimony (though a more heightened standard of review applies to the latter which cannot be predicated solely on the objective medical record).  Further, inconsistency with the objective medical evidence was not the only reason identified by the ALJ that would support discrediting the Plaintiff's testimony, though the additional reasoning offered requires the reader to draw some inferences the ALJ did not overtly make.  Although the ALJ did not make an overt finding of malingering, as Defendant emphasizes, the ALJ did note a neuro-spinal examination noting "a lot of symptom amplification."  AR 25 (citing Exhibit 16F/3, AR 469).

Defendant further emphasizes the notation that Plaintiff had "breakaway strength" in all muscle groups of her legs and cites cases noting "give away weakness" (where the patient initially offers resistance but then the limb suddenly "gives way") and is suggestive of malingering.

The neuro-spinal examiner's reference to "break away strength" probably does not have the same meaning as the references in Defendant's cited caselaw to "give away weakness."  Those are seemingly polar opposites.  Break away strength likely means full strength sufficient to overcome the examiner's resistance, which is not indicative of malingering.  The finding which is suggestive of malingering is the examiner's reference to "a lot of symptom amplification." AR 469.  Although this is not an exceptionally persuasive reason to reject Plaintiff's testimony, it sufficiently buttressed the ALJ's analysis of the objective medical record.  The ALJ committed no error with respect to Plaintiff's testimony.

**VI.**     **Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Maryam Salam Gegan.

IT IS SO ORDERED.

Dated:   **May 6, 2023**                      **/s/ Gary S. Austin**
                                                                    UNITED STATES MAGISTRATE JUDGE